UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINETTE M. HOWARD,

        Plaintiff,              Civil Action No.: 16-13851
                                       Honorable Matthew F. Leitman
        v.                     Magistrate Judge Elizabeth A. Stafford

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF No. 9, 11]**

      Plaintiff Antoinette M. Howard appeals a final decision of Defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the Social Security Act (the Act). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the decision by the administrative law judge (ALJ) is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[ECF No. 11]** be **GRANTED**;
- Howard's motion **[ECF No. 9]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

I.    BACKGROUND

**A. Howard's Background and Disability Application**

Born in August 1969, Howard was 46 at the time of the January 2016 hearing before the ALJ. [ECF No. 7-2, Tr. 22-23]. She completed high school and has past relevant work as a secretary, insurance clerk, general clerk and tax preparer. [*Id.*]. Howard claimed disability resulting from a subarachnoid hemorrhage due to ruptured aneurysm, right-side stroke, diabetes, aneurysm, and lung collapse. [ECF No. 7-6, Tr. 182]. Her alleged onset date is April 9, 2014, the date of her aneurysm. [*Id.*, Tr. 182-83].

Howard and a vocational expert (VE) testified at the hearing. [ECF No. 7-2, Tr. 29-63]. In a February 2016 written decision, the ALJ found Howard to be not disabled. [*Id.*, Tr. 9-24]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Howard timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

**B. The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 920(c).

3

throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Howard was not disabled. At the first step, she found that Howard had not engaged in substantial gainful activity since her onset date. [ECF No. 7-2, Tr. 11]. At the second step, she found that Howard had the severe impairments of obesity, minimal osteoarthritis of the right knee, arthralgia of the left hip with hypertrophic bony changes, ruptured aneurysm with subarachnoid hemorrhage, right cerebrovascular accident, generalized anxiety disorder, and cognitive disorder. [*Id.,* Tr. 12]. She found that Howard suffered the non-severe impairments of diabetes mellitus, hypertension, acute deep venous thrombosis (DVT) of the legs, acute kidney injury and anemia. [*Id.*]. Next, the ALJ concluded that none of Howard's impairments, either alone or in combination, met or medically equaled the severity of the listed impairments. [*Id.*, Tr. 13-15].

Between the third and fourth steps, the ALJ found that Howard had the RFC to perform sedentary work, but with a number of exertional limitations, including no more than frequent lifting and carrying, no more than occasional pushing and pulling, no more than frequent reaching, no

foot control operation, no climbing of ladders, ropes and scaffolds, no crawling and no more than occasional balancing, climbing of ropes and stairs, stooping, crouching, and kneeling. [ECF No. 7-2. Tr. 15]. The RFC also included the non-exertional limitations of no exposure to extreme cold and heat, wetness and humidity, vibration and flashing lights, no exposure to more than office level lighting and noise, and no more than occasional exposure to environmental irritants. The ALJ further limited Howard to unskilled jobs with simple, routine tasks with no production rate requirements and only occasional interaction with public, coworkers and supervisors with no tandem tasks required. [*Id.*]. At the fourth step, the ALJ concluded that Howard could not perform her past relevant work. [*Id.,* Tr. 22]. At the final step, after considering Howard's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there are jobs that exists in significant numbers that Howard could perform, including positions as assembler, sorter and inspector. [*Id.*, Tr. 23].

II.     ANALYSIS

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Howard alleges that the ALJ committed four errors: (1) the ALJ failed to consider the side effects from her many medications on her ability to work; (2) the ALJ violated SSR 96-8 by failing to consider her deep vein thrombosis (DVT) of the legs; (3) the ALJ did not give valid reasons for determining that she was less than credible; and (4) the ALJ's mental RFC assessment is not supported by the record because there are no assessments from any physician consistent with the ALJ's mental RFC. The Court finds that each of these alleged errors is without merit and recommends that the ALJ's decision be affirmed.

## A.

Howard argues that the ALJ committed reversible error by failing to consider the side effects of her various medications, despite her testimony at the hearing that her medicine makes her sleepy and that she believes

her insulin causes her to gain weight. [ECF No. 9, PageID 900, citing ECF No. 7-2, Tr. 54-55, 57]. This contention is not supported by the record.

Despite Howard's testimony, there is no evidence in the record that she reported such side effects to her doctors or sought a change in medication as a result. *See Kerreos v. Commr. of Soc. Sec.*, 2014 WL 5421244, at *7 (E.D. Mich. Oct. 24, 2014) (collecting cases). Allegations of side effects must be supported by objective medical evidence. *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004); *Farhat v. Sec'y of Health & Human Servs.*, 1992 WL 174540 at *3 (6th Cir. July 24, 1992) ("[Claimants] allegations of the medication's side-effects must be supported by objective medical evidence"). In fact, Howard explicitly stated that she did not have medication side effects in the function report submitted. [ECF No. 7-6, Tr. 197]. And she does not appear to have ever complained of side effects to any of her prescribing physicians. [*See e.g.*, ECF No. 7-8, Tr. 446, 448, 458, 461, 465, 467].

Still, the ALJ addressed Howard's complaints of sleepiness and determined that the evidence did not support Howard's testimony regarding the need to nap three and a half to four hours a day. [ECF No. 7-2, Tr. 22]. The ALJ also specifically considered Howard's obesity, which would include any weight gain from her medications, in finding that Howard's right

7

knee osteoarthritis is a severe impairment and accounting for that impairment within her RFC for restricted sedentary work. [ECF No. 7-2, Tr. 20]. The Court finds that the ALJ appropriately addressed Howard's allegations regarding medication side effects and thus rejects her claim of error.

**B.**

During Howard's inpatient rehabilitation from a subarachnoid hemorrhage and ruptured aneurysm, she developed and was treated for a DVT in her right leg. [ECF No. 7-8, Tr. 491-92]. Howard argues that the ALJ erred by failing to consider this non-severe impairment along with her severe impairments in assessing her RFC. [ECF No. 9, PageID 900-02]. She disputes the ALJ's conclusion that the condition resolved after treatment, arguing that the throbbing pain from her knee to her hip is an on-going symptom of DVT. But, again, the record does not support this contention.

Nothing in Howard's records subsequent to the diagnosis and treatment of her acute DVT in May 2014 suggests that the condition persisted; the records contain no evidence of further studies or treatment for DVT. [ECF No. 7-10, Tr. 811-844]. Howard points to no evidence that the leg pain she complained of at the hearing arose from DVT, rather than

8

the osteoarthritis in her knee or the arthralgia of the hip. Indeed, 2015 x-ray studies suggest her complaints of hip and knee pain were caused by orthopedic anomalies and were not vascular in origin. [ECF No. 7-10, Tr. 813, 839]. The ALJ factored Howard's osteoarthritis of the knee, arthralgia of the hip, and obesity into the RFC, and limited her to sedentary work with no foot control operations. [ECF No. 7-2, Tr. 15, 20-21]. Howard fails to sustain her burden of demonstrating that, even if she suffered continued complications from her DVT, she would require a more restrictive RFC. *Preslar*, 14 F.3d at 1110 (claimant bears burden during first four steps); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive RFC).

## C.

Howard argues that remand is required because the ALJ's mental RFC is not supported by or consistent with any physician's RFC, and that the ALJ ignored her depression and cognitive difficulties in formulating her mental RFC. To the contrary, the ALJ gave weight to the opinions of both the psychological consultative examiner (Patrick Murphy, Ph.D.) and State agency consultant (Sheila Williams-White, Ph.D.), incorporating and broadening the mental restrictions they suggested in the RFC. [ECF No. 7-2, Tr. 15, 19-21, citing ECF No. 7-3, Tr. 74-76, 89-91; ECF No. 7-10, Tr.

9

805-10]. The ALJ agreed with Dr. Murphy's limitation to simple work, but added the restrictions to Howard's social interactions with the public, co-workers and supervisors, due to Dr. Murphy's diagnosis of anxiety. [ECF No. 7-2, Tr. 19-20; ECF No. 7-10, Tr. 805-10]. The ALJ also agreed with Dr. Williams-White's concerns about Howard meeting more complex and detailed work demands, limiting her to unskilled work as well as no production rate pace work. [ECF No. 7-2, Tr. 21; ECF No. 7-3, Tr. 74-76, 89-91].

The RFC assigned by the ALJ directly addresses both Dr. Murphy's and Dr. Williams-White's findings of Howard's mildly affected ability to understand, remember and carry out instructions and make judgments, ability to sustain routine work activity, tolerate low stress social demands, and adapt to simple changes in routine. [ECF No. 7-2, Tr. 15, 19, 21; ECF No. 7-3, Tr. 70; ECF No. 7-10, Tr. 809]. Howard fails to show that this RFC is insufficiently restrictive, which is her burden. *Preslar*, 14 F.3d at 1110; *Jordan*, 548 F.3d at 423.

### D.

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Here, the ALJ determined that

Howard was not entirely credible, relying in part upon her continued work for the Department of Community Health (DCH). [ECF No. 7-2, Tr. 12]. The ALJ noted that Howard testified that she worked at DCH only in about July 2014,[3] but earning records revealed she continued through the fourth quarter of 2015, albeit with earnings that fell below substantial gainful activity levels. [*Id.*, Tr. 12, 35; ECF No. 7-5, Tr. 175]. The ALJ also cited a January 2016 note that Howard had told a doctor that she intended to foster and adopt children. [ECF No. 7-10, Tr. 840]. These plans were found by the ALJ to be inconsistent with Howard's alleged symptoms and functional limitations. [ECF No. 7-2, Tr. 21].

Howard takes issue with the ALJ's characterization of her testimony, but does not provide a compelling reason to disturb the ALJ's credibility determination. The disparity between Howard's testimony and the earning records in evidence justifies the ALJ's assessment of Howard's credibility, and an ALJ may properly consider plaintiff's part-time employment as indication of her functionality. 20 C.F.R. §§ 404.1571 & 416.971 ("Even if the work you have done was not substantial gainful activity, it may show

---

[3] Howard had reported to a doctor on July 3, 2014, that she had returned to working about "2 hours per day" and denied any problems doing so. [ECF No. 7-8, Tr. 445]. But at the hearing, she testified that she worked in July 2014 for two hours "[n]ot every day. Probably about once a week." [ECF No. 7-2, Tr. 35].

11

that you are able to do more work than you actually did.").

Other factors support the ALJ's credibility determination. The ALJ cited treatment notes from Howard's follow up visit at the neurorehabilitation clinic in which Howard indicated she was ambulating without an assistive device, and was independent with all instrumental activities of daily living in July 2014. [ECF No. 7-2, Tr. 19; ECF No. 7-8, Tr. 445]. Those treatment notes report that Howard said that her problems with short-term memory, attention and concentration had completely resolved and that she felt she had made a dramatic recovery. [ECF No. 7-8, Tr. 445]. And as stated by the ALJ, Howard's records from late 2015 through 2016 do not document ongoing right-sided weakness, and there is no evidence of mental health treatment. [ECF No. 7-2, Tr. 20]. The ALJ concluded that all of these factors suggested Howard's complaints were not as significant and limiting as she alleged. [ECF No. 7-2, Tr. 21].

These facts taken together constitute substantial evidence on which the ALJ could rely in discrediting plaintiff's claims about the limiting effects of her symptoms. *See Kepke v. Comm'r of Soc.Sec.*, 636 F. App'x 625, 638-39 (6th Cir. 2016); *see also Steagall v. Comm'r of Soc. Sec.*, 596 F. App'x 377, 381 (6th Cir. 2015) ("An ALJ may discount a claimant's credibility when the ALJ finds contradictions among the medical reports,

12

claimant's testimony, and other evidence."). Consequently, there are no compelling reasons to disturb the ALJ's credibility determination and her decision should be affirmed.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Howard's Motion for Summary Judgment **[ECF No. 9]** be **DENIED**, the Commissioner's Motion **[ECF No. 11]** be **GRANTED** and this case be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 24, 2017

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party

13

might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 24, 2017.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager